UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KALANDRA LEWIS and
CHRISTOPHER LEWIS,

      Plaintiffs,

v.                            Case No:  2:15-cv-404-FtM-99CM

EVANSTON INSURANCE
COMPANY,

      Defendant.

_____/

## ORDER[1]

     This matter comes before the Court on Plaintiffs Kalandra and Christopher Lewis' Motion for Summary Judgment (Doc. #32) filed on January 29, 2016.  Defendant filed a cross Motion for Summary Judgment (Doc. #39) on February 2, 2016.  The parties have filed responses in opposition to the motions (Doc. #40; Doc. #41.)  These matters are ripe for review.

## BACKGROUND

     This action arises out of an insurance coverage dispute involving a massage performed on Plaintiff Kalandra Lewis that caused her injuries culminating in a stroke.  The massage was performed by Hanzel Alpizar, a licensed massage therapist, at Serenity Spa for Total Health and Relaxation, Inc. (the "Spa") which is owned by Denise

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Vega.  (Doc. #1, ¶¶ 4-8.)  On December 2, 2012, Plaintiffs initiated a lawsuit against the Spa and subsequently amended their complaint as a suit against Alpizar and Vega (the "underlying action").  (Doc. #39-1; Doc. #39-3.)  Plaintiffs and Vega entered into a *Coblentz* settlement agreement[2] for a judgment of $500,000 against Vega who assigned her rights, claims, and causes of action against Defendant Evanston to Plaintiffs.  (Doc. #2-1; Doc. #32-4.)

Defendant Evanston, provided insurance coverage to Hands-On Trade Association ("HOTA") of which Vega is a member.  (Doc. #39-7, pp. 20-21.)  A certificate of insurance was issued to Vega for the period of time when Kalandra was injured.  (Doc. #39-9.)  Vega was covered under Evanston Professional Liability policy number SM-884288 (the "Policy").  (Doc. #39-6.)  Alpizar and the Spa were not members of HOTA or listed under the policy or certificates of insurance.  (Doc. #39-5.)  Plaintiffs filed the instant suit against Evanston seeking to establish liability for the injuries suffered by Kalandra under Vega's professional liability policy.

Plaintiffs assert claims against Defendant for declaratory relief regarding the existence of liability insurance coverage (Count I) and breach of insurance contract claim (Count II).  Plaintiffs move for summary judgment as to Count I asserting 1) the Policy is ambiguous and must be construed in favor of coverage; and 2) the Policy provides professional liability coverage for vicarious liability claims.  (Doc. #32.)  Defendant moves

---

[2] The term "*Coblentz* agreement" stems from the case *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir.1969).  *See Perera v. U.S. Fid. and Guar. Co.*, 35 So.3d 893, 900 (Fla.2010).  In a *Coblentz* agreement, the underlying tort plaintiff releases the insureds from liability in exchange for the insured's right to indemnity from the insurer.  Florida courts will uphold a *Coblentz* agreement provided that there is coverage, the insurer wrongfully refused to defend the underlying suit, and the agreement is reasonable and entered in good faith.  *Chomat v. N. Ins. Co. of N.Y.*, 919 So.2d 535, 537 (Fla. 3d DCA 2006).

for summary judgment asserting the Policy is unambiguous and only provides coverage for massages performed by Denise Vega.  (Doc. #39.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs a motion for summary judgment.  Under that rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely in dispute "if the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party.  *See id.* at 255; *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010).

The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party meets this burden, the opposing party must show that there is a material dispute of fact for trial.  *See id.* at 324; *Anderson*, 477 U.S. at 250.  In rebuttal, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

**DISCUSSION**

The parties agree the issue before the Court is whether the subject insurance Policy insures vicarious liability claims. (Doc. #32, p. 7; Doc. #41, p. 8.) Plaintiffs move for summary judgment (Doc. #32) asserting the Policy's grant of professional liability coverage is ambiguous as to whether it covers vicarious liability claims and therefore, must be construed in favor of coverage. Plaintiffs also argue that vicarious liability claims are covered under the professional liability coverage when the contract is viewed as a whole. Evanston responds in opposition (Doc. #41) and seeks summary judgment (Doc. #39) asserting the Policy is unambiguous and precludes coverage for any vicarious liability claims.

It is a cardinal principle of insurance law that where the provisions of an insurance policy are clear and unambiguous, the terms of the policy will be accorded their plain meaning and enforced as written. *See Rigel v. National Cas. Co.*, 76 So.2d 285, 286 (Fla. 1954). When construing the provisions of an insurance policy, the provisions are not to be interpreted in isolation but in harmony with the rest of the contract. *See Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938 (Fla.1979). Additionally, the terms are construed to give the broadest possible coverage to the insured. *See Union Am. Ins. Co. v. Maynard*, 752 So.2d 1266, 1268 (Fla. Dist. Ct. App. 2000). In an action to determine insurance coverage, the insured has the "burden of proving that a claim against it is covered by the insurance policy." *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir.1997). The insurer has the burden of proving an exclusion to coverage. *Id.*

With respect to determining insurance coverage issues, summary judgment is generally appropriate inasmuch as the construction and legal effect of a written contract are matters of law to be determined by the Court. *See, e.g.*, *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001) ("Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely upon the applicability of the insurance policy, the construction and effect of which is a matter of law.") (citations omitted). If a contract is "susceptible to more than one reasonable interpretation" and cannot be reasonably reconciled, the contract is deemed ambiguous and rules of contract interpretation must be applied. *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So.3d 566, 570 (Fla.2011) (quoting *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004)).

### 1. Relevant Policy Provisions

The Policy provides two different types of coverage: 1) general liability coverage, and 2) professional liability coverage. It is undisputed that the general liability portion of the Policy does not provide coverage for vicarious liability claims. Therefore, the remaining issue is whether the professional liability portion of the Policy provides coverage for vicarious liability claims. The relevant portion of the professional liability policy provides as follows:

INSURING AGREEMENT

The Company shall pay on behalf of the Insured all sums, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Membership Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section A, Claim Reporting Provision, for Professional Personal Injury to which this Coverage Part applies by reason for any act, error or omission in *Professional Services rendered or that should have been*

*rendered by the Insured and arising out of the conduct of the Insured's Professional Services* provided:

A. the act, error or omission happens during the Membership Period or on or after the Retroactive Date stated in Item 6. of the Declarations; and

B. Prior to the start date of the Membership Period of the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may result in a Claim under this Coverage Part.

(Doc. #32-1, p. 24.) (emphasis added.)

The Policy defines "Insured" as: "1. [a] member of the Association to whom a Certificate of Insurance has been issued, and who has been added to this policy at an additional premium charge, by a Monthly Report of Members Schedule; and 2. A Certificate Holder Additional Insured." (Doc. #32-1, p. 7.) Next, the medical professions professional liability provisions define "Professional Personal Injury" as: "1. Any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any patient, person, or resident of a healthcare facility receiving Professional Services from the Insured[.]" (Doc. #32-1, p. 24.)

Finally, Exclusion B to the professional liability policy excludes coverage for

liability arising out of the Insured's activities in his/her capacity as proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, business enterprise, or any governmental body, sub-division or agency not named as an Insured under this policy[.]
. . .

("Exclusion B") (Doc. #32-1, p. 25.)

### 2. Whether the Policy is Ambiguous

Plaintiffs assert that the undefined word "rendered" in the Policy has two possible interpretations: 1) to perform personally, or 2) to provide or furnish through another. (Doc. #32, p. 11.) According to Plaintiffs' because the term "rendered" is susceptible to more

than one reasonable interpretation, it is ambiguous and should be construed against Evanston. Plaintiffs contend that Vega "rendered" the massage to Kalandra through her agent Alpizar.

Evanston does not contest Plaintiffs' definition of the term "rendered" but asserts that when read as a whole, the Policy is not ambiguous. (Doc. #41, p. 10.) Specifically, Evanston contends that because the services must be "rendered *by the Insured*" and must "aris[e] out of the conduct" *of the Insured* that coverage only exists as to those services that Vega personally performed. (Doc. #32-1, p. 24.)

The Court agrees with Evanston. Individual terms must not be considered in isolation when interpreting a contract, but rather must be interpreted as a whole and in relation to one another. *Siedle v. Nat'l Ass'n of Sec. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1144 (M.D. Fla. 2002) (citing *Jerry's, Inc. v. City of Miami*, 591 So.2d 1000, 1001 (Fla. 3d DCA 1991). Where "language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language in the contract is to be given the meaning which it clearly expresses." *Westport Ins. Corp. v. VN Hotel Group, LLC*, 761 F.Supp.2d 1337, 1342 (M.D. Fla. 2010) (citing *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So.2d 95, 97 (Fla. 5th Dist. Ct. App. 1991)). The Court finds that the Policy is not ambiguous. Giving the term "rendered" its ordinary meaning and reading the Policy as a whole, the Court concludes the Policy requires some act on the part of the insured. It is clear the insured, as defined under the terms of the Policy, is Vega. Therefore, in order for coverage to exist under the Policy, Vega must have caused an injury while performing a professional service.

Plaintiffs rely heavily on the case of *Reg'l MRI of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co.*, 884 So. 2d 1102 (Fla. Dist. Ct. App. 2004) in support of their motion. The Court in *Reg'l MRI of Orlando, Inc.* held that an MRI facility could receive personal injury protection benefits from an insurance carrier where part of the services it provided were "rendered" by the facility and part were rendered by an independent contractor retained by the facility. The Court finds that *Reg'l MRI of Orlando, Inc.* is distinguishable from the instant case. First, *Reg'l MRI of Orlando, Inc.* involves statute interpretation, not an insurance policy. In addition, the MRI facility in *Reg'l MRI of Orlando, Inc.* rendered part of the services by performing the MRI and then directed the independent contractor physician to read the results of the MRI.

In this case, it is undisputed that Vega did not perform the massage that injured Plaintiffs, nor did she direct Alpizar to perform the massage. Evanston acknowledges that had Vega directed Alpizar to give the massage to Kalandra, that such conduct could fall under the Policy because there would be a link between the services rendered and Vega. (Doc. #41, p. 12.) However, there is no evidence that Vega directed or supervised the massage that caused Plaintiffs' injuries. Furthermore, the record establishes that Alpizar was an independent contractor of Serenity Spa and not an employee of Vega. (Doc. #39-10, pp. 16-20.) The Policy does not extend to Serenity Spa and does not provide group coverage to a massage business. Rather, it protects Vega for her own acts of negligence. Exclusion B forecloses any liability arising out of Vega's role as owner of Serenity Spa.

### 3. Whether the Policy Covers Vicarious Liability Claims

Plaintiffs next argue that when reading the Policy as a whole it provides coverage for vicarious liability claims.  (Doc. #32, p. 3.)  Plaintiffs assert the general liability prong of the Policy contains exclusionary language which specifically precludes liability arising out of the conduct of any person or organization other than a member.  (Doc. #32, p. 13.) Plaintiffs argue this demonstrates that Evanston knew how to preclude vicarious liability coverage from the professional liability part of the Policy and it chose not to do so.  (Doc. #32, p. 13).  A vicarious-liability claim rests upon the finding that the passive tortfeasor can be held liable for the acts or omissions of someone else. *See* 38 Fla. Jur 2d Negligence § 101 (stating vicarious liability, one person, although entirely innocent of any wrongdoing and without regard to duty, is nonetheless held responsible for harm caused by the wrongful act of another).

The Court finds the omission of an exclusionary clause from the professional liability portion of the Policy does not, in itself, indicate Evanston's intent to cover vicarious liability claims.  As discussed above, the language of the Policy as a whole makes clear the professional liability coverage requires Vega's participation in the act that causes injury.  The general liability portion of the Policy does not require a direct act on the part of the insured.  There was no need to include exclusionary language in the professional liability portion of the Policy because it was already limited to only covering direct acts of Vega.

Under Exclusion B of the professional liability portion of the Policy, Vega was only covered by her own acts or acts that she directed another to perform.  Vega was not covered in her role as owner, supervisor, director, or landlord.  As admitted by Evanston,

had Vega directed Alpizar to give the massage to Lewis, there may have been coverage under the Policy. (Doc. #41, p. 12). In this case, Vega neither performed the massage that caused Plaintiffs' injuries, nor instructed, directed, or supervised the massage. The Plaintiff's interpretation would require the Court to rewrite the terms of the Policy and courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the party." *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So.2d 1245, 1248 (Fla.1986). Consequently, there is no vicarious liability coverage under the professional liability portion of the Policy for Plaintiffs' injuries.

Plaintiffs also assert the additional insured provision in the general liability prong of the Policy provides coverage to the landlord for the acts of the member or people acting on behalf of the member, demonstrating that coverage for vicarious liability claims must exist in the professional liability prong. The Court finds this argument to be unavailing. The additional insured provision applies to the general liability prong for the Policy and is an entirely distinct type of coverage from the professional liability coverage.

Furthermore, the language of the provision is restrictive in that coverage is limited to bodily injury or property damage caused in whole or in part by the acts or omissions of the member, or the acts or omissions of those acting on behalf of such member. Vega is the only member covered by the policy. As seen above, Vega did not perform the service in question nor did she direct the service to be performed by another. Evanston noted in its brief the General Liability portion does not extend greater rights to the additional insured than the insured. Thus, any acts performed Alpizar would not be covered by the Policy since Vega herself was not covered under the exclusion.

Based upon a reading of the Policy as a whole, the Court finds there is no basis for establishing coverage for the vicarious liability claims Plaintiffs assert against Vega. Thus, the Court finds the Policy is unambiguous and precludes coverage for Plaintiffs' injuries and Evanston is entitled to judgment as a matter of law as to Count I.

Accordingly, it is now

**ORDERED:**

1. Plaintiffs' Dispositive Motion for Summary Judgment as to Count I of the Complaint (Doc. #32) is **DENIED**.

2. Defendant Evanston's Corrected Motion for Summary Judgment (Doc. #39) is **GRANTED**. The Case is hereby **DISMISSED**. The Clerk of the Court is directed to enter judgment accordingly, terminate any pending motions and deadlines and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of June, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record